IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANKLIN LOPEZ and EDWIN LOPEZ, | : | Civil No. 1:18-cv-1592 |
| | : | |
| Petitioners, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN CLAIR DOLL, et al., | : | |
| | : | |
| Respondents. | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Franklin Lopez ("Franklin") and Edwin ("Edwin") Lopez (collectively "Petitioners"), are natives and citizens of Honduras who are the subject of reinstated removal orders pursuant to 8 U.S.C. §1231(a)(5) but are resisting removal by asserting claims under the Convention Against Torture ("CAT"). Both men have remained continuously in immigration custody for nearly a year while awaiting the Immigration Court's decision on whether they will be afforded CAT relief. On December 13, 2018, this court held an individualized bond hearing for Petitioners. This decision follows.

## I. **Factual and Procedural Background**

At an unknown date, Petitioners Franklin and Edwin Lopez left Honduras and entered the United States. Petitioners were later removed from the United States, but then re-entered sometime around 2007. (Doc. 19, p. 4.) Since their return, they resided, apparently without incident, in this country. However, on January 5, 2018,

Petitioners were encountered by immigrations officials and were determined to be undocumented aliens who had previously been removed from the United States. At that time, DHS reinstated their prior removal orders pursuant to INA § 241(a)(5), and since then they have remained continuously in immigration custody.

Presently, Immigration and Customs Enforcement ("ICE") is seeking the removal of Petitioners based upon the prior, reinstated removal orders entered against them. However, Petitioners are attempting to resist removal from the United States to Honduras by arguing that they are entitled to protections under CAT. Specifically, Petitioners have alleged that they fear death at the hands of the criminal gang MS-13 if they are returned to Honduras. On the basis of these assertions of fear for their safety, Petitioners seek withholding of removal to Honduras.

On September 10, 2018, Petitioners presented their claims for withholding of removal and protection under Article III of CAT at an individual merits hearing. The IJ denied both claims, finding that Petitioners had not met their burden of proof in establishing past persecution or a well-founded fear of future persecution on account of a protected ground, or that the Honduran government would acquiesce or remain willfully blind to their torture. As such, the IJ ordered them removed from the United States to Honduras. On October 9, 2018, Petitioners appealed the denial of their claims to the Board of Immigration Appeals ("BIA"), and the appeals are currently pending.

After nine months in detention, on August 10, 2018, Petitioners filed a petition for writ of habeas corpus in this court challenging their detention by ICE while they wait for a determination on whether they will be afforded protection from removal. (*Id.*) On October 4, 2018, Magistrate Judge Martin Carlson issued a report and recommendation finding this case indistinguishable from *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208 (3d Cir. Sept. 26, 2018), a recent Third Circuit decision which created a presumption in favor of an individualized bond hearing once six months of detention have elapsed. Magistrate Judge Carlson thus recommended that an IJ conduct an individualized bond hearing in the first instance. (Doc. 19.) By order dated October 11, 2018, this court adopted the report and recommendation and ordered that an IJ afford the petitioners an individualized hearing within 21 days of the order. The court retained authority to conduct an individualized bond determination, if necessary. (*See* Doc. 2, ¶ 5.)

Bond hearings were held before an IJ on October 22, 2018, and November 16, 2018. On November 29, 2018, the IJ issued decisions denying Petitioner's bond request, concluding that they represented flight risks. On November 29, 2018, this court found that the bond hearings had been legally insufficient because they were not appropriately individualized. (Doc. 23.) The court then, on December 13, 2018, held a bond hearing itself. This opinion follows.

## II. **Legal Standard**

There is no question that this court has the power to enforce its writs of habeas corpus. *Sylvain v. Attorney General*, 714 F.3d 150, 155 (3d Cir. 2013); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Compliance with the court's writ is measured against the legal requirements for bond hearings for immigrants being detained pursuant to § 1226(c).

The Third Circuit has provided a two-step process for courts to follow where, as here, a detainee challenges his prolonged detention under § 1226(c) or § 1231(a)(5). Pursuant to this process, the court must 1) determine whether the detention has become unreasonable, and then, if so, must 2) determine if that unreasonable detention is still necessary to prevent flight risk or danger to the community. *See Leslie v. Att'y Gen.*, 678 F.3d 265, 269 (3d Cir. 2012).

Significantly, a bond hearing must be "individualized." *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015). Mechanistic reliance on factors that are common to all § 1231(a)(5) detainees will not suffice. *See Singh*, 638 F.3d at 1205-06. Moreover, at the hearing, the government bears the burden of proving that "continued detention is necessary to fulfill the purposes of the detention statute." *Diop v. ICE/Homeland Security*, 656 F.3d 221, 232 (3d. Cir. 2011). This means that the government must produce individualized evidence that continued detention was or is necessary to prevent flight risk or danger to the community."

*Chavez-Alvarez*, 678 F.3d at 269; *see Sanchez v. Sabol*, Civ. No. 15-cv-2423, 2016 WL 7426129, at **5-6 (M.D. Pa. Dec. 23, 2016).

### III. Discussion

The Third Circuit's decision in *Guerrero-Sanchez* is integral to the petition presently before this court. Indeed, in *Guerrero-Sanchez* the Third Circuit was confronted with a factual scenario nearly identical to that before this court—a petition for a writ of habeas corpus filed by a detained alien who is subject to a reinstated removal order that the alien is resisting based upon protection under CAT. Pertinent here, the Third Circuit found that, although "a reinstated removal order is administratively final for the purposes of removal because it provides that an alien "shall be removed" from the United States, and that determination is "not subject to being reopened or reviewed," 8 U.S.C. § 1231(a)(5), an alien subject to such an order is still entitled to an individualized bond hearing after six months of detention. In his report and recommendation, Magistrate Judge Carlson summarized the Third Circuit's reasoning as follows:

> [T]he appellate court observe[d] that aliens who are resisting a reinstated final order of removal on fear of torture grounds are in a very different situation than most aliens who are facing final orders of removal. For many aliens facing final orders of removal, that order represents the last step in an administrative process, and the extent of any further detention is both fixed and finite. All that remains is the task of repatriation of the detainee to the alien's homeland. In this more routine setting, the Court of Appeals noted that the United States Supreme Court has prescribed a presumptively reasonable duration of

5

> detention of 6 months, beyond which an entitlement of an individualized bond hearing may arise.
>
> Those aliens who are seeking to resist removal from the United States to their homelands by arguing for the first time that they are entitled to protections under CAT, while also detained pursuant to 8 U.S.C. § 1231, are in a very different factual footing, however. Litigation of these CAT claims can involve a protracted agency administrative process with rulings by Immigration Judges and appeals to the [BIA]. Such claims are also subject to judicial review by the Court of Appeals. While acknowledging these factual distinctions, after examining the administrative and legal burdens which both the government aliens like the petitioners face when attempting to avoid removal pursuant to final orders of removal based upon claims brought under CAT, the appellate court concluded that, as a matter of due process, aliens facing reinstated removal orders who were contesting removal based upon CAT claims still retained due process entitlement to an individualized bond consideration similar to that enjoyed by other aliens facing final removal orders.
>
> Accordingly, the court "adopt[ed] a six-month rule here—that is, an alien detained under § 1231(a)(6) is generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody." *Guerrero-Sanchez*, [905 F.3d at 226].

(Doc. 19, pp. 8-9.)

At a bond hearing for a § 1231 detainee, the Government has the burden of proving by clear and convincing evidence that the alien poses a risk of flight or danger to the community; otherwise, the alien "is entitled to be released from custody." *Guerrero-Sanchez*, 905 F.3d at 224. In considering whether to release the detainee, "due process requires [the court] to recognize that, at a certain point—which may differ case by case—the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous." *Id.*

6

Turning to the case *sub judice*, at the purportedly individualized bond hearing held before this court on December 13, 2018, the Government argued not that Petitioners are dangers to the community—indeed, the Petitioners have both resided and worked in the United States for over a decade without incident—but rather that they are flight risks. In this regard, the Government emphasized that Petitioners resided in this country illegally and are subject to final orders of removal. Thus, the theory goes, they have no incentive to attend removal proceedings and are flight risks.

In so arguing, the Government blatantly disregarded the Third Circuit's clear and unequivocal reasoning in *Guerrero-Sanchez*. By holding that due process requires an individualized bond hearing for § 1231 detainees after a prolonged period of detention, the Third Circuit necessarily found that neither illegal status nor a final order of detention is sufficient to establish flight risk. Otherwise, no § 1231 detainee would be eligible for bond.

Here, as in *Guerrero-Sanchez*, Petitioners are pursuing bona fide withholding-only or CAT relief that could take years to resolve, and their continued detention as they pursue applicable legal remedies raises serious due process concerns. Because the Government failed to present any individualized evidence—let alone clear and convincing evidence—showing that continued detention is necessary to prevent flight risk or danger to the community, Petitioners' request for bond will be granted.

An appropriate order follows.

                                                  <u>s/Sylvia H. Rambo</u>
                                                  SYLVIA H. RAMBO
                                                  United States District Judge

Dated: December 20, 2018